# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

RONNIE L. FAMOUS,

      Plaintiff,

v.

MICHAEL JULSON and JOHN DOE OFFICERS 1–4,

      Defendants.

Case No. 20-CV-243-JPS

**ORDER**

  Plaintiff Ronnie L. Famous, a prisoner proceeding in this matter *pro se*, filed a complaint alleging that Defendants violated his constitutional rights. (Docket #1). On July 8, 2020, this Court screened the complaint and allowed Plaintiff to proceed on four claims: (1) excessive force, (2) conditions of confinement, and (3) deliberate indifference, in violation of the Eighth Amendment, and (4) state law negligence. (Docket #8).

  On November 13, 2020, Defendant Michael Julson filed a motion for summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies. (Docket #13). This motion has been fully briefed, and for the reasons explained below, will be granted on Claims One, Two, and Four in full, as well as on Claim Three in part (as to Plaintiff's request for medical attention). The Court will also address Plaintiff's motion to appoint counsel. (Docket #22).

1. **STANDARD OF REVIEW**

 1.1 **Summary Judgment**

  Federal Rule of Civil Procedure 56 provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a); *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016).

### 1.2 Exhaustion of Prisoner Administrative Remedies

The Prison Litigation Reform Act ("PLRA") establishes that, prior to filing a lawsuit complaining about prison conditions, a prisoner must exhaust "such administrative remedies as are available[.]" 42 U.S.C. § 1997e(a). To do so, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). He must do so precisely in accordance with those rules; substantial compliance does not satisfy the PLRA. *Id.*; *Burrell v. Powers*, 431 F.3d 282, 284–85 (7th Cir. 2005). A suit must be dismissed if it was filed before exhaustion was complete, even if exhaustion is achieved before judgment is entered. *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). The exhaustion requirement furthers several purposes, including restricting frivolous claims, giving prison officials the opportunity to address situations internally, giving the parties the opportunity to develop the factual record, and reducing the scope of litigation. *Smith v. Zachary*, 255 F.3d 446, 450–51 (7th Cir. 2001). Failure to exhaust administrative remedies is an affirmative defense to be proven by a defendant. *Westefer v. Snyder*, 422 F.3d 570, 577 (7th Cir. 2005).

### 1.2.1 Inmate Complaint Review System

The Wisconsin Department of Corrections ("DOC") maintains an inmate complaint review system ("ICRS") to provide a forum for administrative complaints. Wis. Admin. Code § DOC 310.04. The ICRS "allow[s] inmates to raise in an orderly fashion issues regarding department policies, rules, living conditions, and employee actions that personally affect the inmate or institution environment, including civil rights claims." *Id.* § DOC 310.01(2)(a). Before commencing a civil action or special proceedings, "inmate[s] shall exhaust all administrative remedies the [DOC] has promulgated by rule." *Id*. § DOC 310.05.

There are two steps an inmate must take to exhaust the available administrative remedies. First, the inmate must file an offender complaint with the Institution Complaint Examiner ("ICE") within fourteen days of the events giving rise to the complaint. *Id.* § DOC 310.07(2). The ICE may reject the complaint or return the complaint to the inmate and allow him or her to correct any issue(s) and re-file within ten days. *See id.* § DOC 310.10(5),(6). If the complaint is rejected, the inmate may appeal the rejection to the appropriate reviewing authority within ten days. *Id*. § DOC 310.10(10).[1] If the complaint is not rejected, the ICE issues a recommendation of either dismissal or affirmance to the reviewing authority. *Id.* § DOC 310.10(9),(12). The reviewing authority ("RA") will affirm or dismiss the complaint, in whole or in part, or return the complaint to the ICE for further investigation. *Id.* § DOC 310.11(2).

Second, if the ICE recommends, and the RA accepts, dismissal of the complaint, the inmate may appeal the decision to the Corrections Complaint Examiner ("CCE") within fourteen days. *Id.* §§ DOC 310.09(1),

---

[1]The ICRS defines a "reviewing authority" as "a person who is authorized to review and decide an inmate complaint." Wis. Admin. Code § DOC 310.03(15).

310.12. The CCE issues a recommendation to the Secretary of the Department of Corrections, who may accept or reject it. *Id.* §§ DOC 310.12(2), 310.13. The inmate exhausts this administrative process when either he or she receives the Secretary's decision. *Id.* § DOC 310.13(2),(3). If the inmate does not receive the Secretary's written decision within ninety days of the date of receipt of the appeal in the CCE's office, the inmate shall consider the administrative remedies to be exhausted. *Id.* § DOC 310.13(4).

## 2. RELEVANT FACTS

Plaintiff was incarcerated at Columbia Correctional Institution ("Columbia") when the alleged events took place. (Docket #1 at 2). Defendants John Doe Officers 1–4 are correctional officers at Columbia, and Defendant Michael Julson ("Julson") is a captain there (collectively, "Defendants"). (*Id.* at 2–3). Plaintiff alleges that on November 18, 2019, Plaintiff yelled at Sergeant Carl Kim when she returned mail to him that he had given to prison officials for mailing to the court. (*Id.* at 4). Julson was called and came to Plaintiff's cell with the four John Doe Officer Defendants. (*Id.*) Plaintiff yelled at them and refused to place his hands out to be handcuffed. (*Id.*)

Defendants returned to Plaintiff's cell in riot gear with gas masks and ordered him to come to the door and submit to restraints; Plaintiff refused. (*Id.* at 5). After his refusal, Defendants sprayed Plaintiff with OC "pepper" spray numerous times. (*Id.*) Plaintiff alleges that after he was sprayed, his body began to burn and he could hardly breathe. (*Id.*) Plaintiff stopped resisting Defendants and obeyed their orders from that point on. (*Id.*) According to Plaintiff, Defendants ordered Plaintiff to get on his knees and crawl backwards to the door to be handcuffed. (*Id.*) Plaintiff complied and had to crawl through pepper spray on the floor, which caused his

hands and knees to burn. (*Id.*) Once at the door, Plaintiff was handcuffed. (*Id.* at 5–6).

After being removed from his cell, Plaintiff asked Julson if he could take a shower and see the nurse because he was in pain and was having problems breathing. (*Id.* at 8). Plaintiff states that Julson refused to let him see the nurse and refused to allow him to take a decontamination shower to clean himself of the pepper spray. (*Id.* at 7). Instead, Plaintiff was allowed to rinse his face for a few seconds. (*Id.* at 8). Plaintiff was put into a cell with nothing but a smock to wear. (*Id.*) Additionally, Plaintiff alleges that he had to sleep in the cold cell on a concrete bed without a mattress, additional clothing, blankets, bedding, or towels. (*Id.* at 9). The cell did not have a washcloth, soap, toilet paper, or running water. (*Id.*) Further, Plaintiff alleges that he was forced to ask another prisoner to write to the nurse to seek medical help, because Defendants refused to give him a pencil and health services slip. (*Id.*)

Plaintiff filed one inmate complaint regarding the events on November 18, 2019: CCI-2019-20928. (Docket #15 at 2). The inmate complaint was acknowledged by the ICE office on December 4, 2019. (*Id.*) Plaintiff identified his one issue as "Jewelson refused to allow me to shower after spraying me with a chemical." (*Id.*) In the details section, Plaintiff wrote, "On 11-18-19 I was sprayed with a chemical by capt. Jewelson, who refused to allow me to wash off the spray, causing physical damage to my health." (*Id.*) The ICE investigated the inmate complaint and recommended dismissal because it was "clear Inmate Famous did in fact receive . . . a decontamination shower." (*Id.*) The RA agreed and dismissed the inmate complaint on December 17, 2019. (*Id.* at 3). Plaintiff appealed, writing on his appeal form that, "captain Julson refused to allow me to shower after I was sprayed with OC. He only allowed his officer to rinse my face – nothing

else causing burning body pain and skin discoloration." (*Id.*) The CCE recommended dismissal because Plaintiff was provided a decontamination shower, and the Office of the Secretary accepted the recommendation and dismissed the appeal on January 23, 2020. (*Id.*)

**3.     ANALYSIS**

Julson alleges that Plaintiff has not exhausted his administrative remedies for Claims One (excessive force); Two (conditions of confinement); Three (deliberate indifference to the extent it relates to Plaintiff requesting medical attention); and Four (state law negligence); and therefore, those claims must be dismissed for failure to exhaust. Plaintiff concedes that he did not exhaust his excessive force claim (regarding being strapped into a restraint chair); his conditions of confinement claim; his deliberate indifference claim (regarding seeking medical attention); and his state law negligence claim. (Docket #18 at 3). Julson's motion for summary judgment will be granted accordingly, and such claims will be dismissed without prejudice for Plaintiff's failure to exhaust.[2]

Both parties agree that Plaintiff exhausted his administrative remedies regarding a claim against Julson denying Plaintiff a decontamination shower after he was sprayed with pepper spray. (Docket #14 at 1–2, 10; Docket #18 at 3; Docket #21). There are, however, two areas of disagreement. The first dispute is whether Plaintiff can proceed on claims of both excessive force and deliberate indifference—or only on a deliberate indifference claim—regarding the denial of a decontamination shower after he was sprayed with pepper spray.

---

[2] Although it seems clear that Plaintiff will not be able to complete the ICRS process for his claims at this late date, dismissals for failure to exhaust are always without prejudice. *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

The Court, in the Screening Order, listed a lack of shower after being sprayed by pepper spray as a potential excessive force claim. (Docket #8 at 5–6). Upon further review, the Court determines that the denial of a decontamination shower after being sprayed with pepper spray is not an excessive force claim. Denying someone a shower is not an act of applying force, and therefore, is not an excessive force claim. Thus, Plaintiff may proceed on only a deliberate indifference claim regarding the denial of a decontamination shower.

The second disagreement is whether Plaintiff exhausted his decontamination shower claim against all Defendants, or only as to Julson. Defendants argue that because Plaintiff's grievance only named Julson, then the prison officials did not have notice that they needed to investigate whether other staff members failed to provide a decontamination shower. (Docket #21 at 2–3). Based on the lack of notice, Defendants argue that Plaintiff did not exhaust his decontamination shower claim against any of the John Doe Officer Defendants. (*Id.*)

To satisfy the exhaustion requirement, a grievance must alert prison officials to the claims the plaintiff has included in the complaint, but need only provide the level of detail required by the grievance system itself. *Jones v. Bock*, 549 U.S. 199, 218–19 (2007); *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (purpose of exhaustion requirement is to give officials "time and opportunity to address complaints internally before allowing the initiation of a federal case"). A prisoner need not name a specific individual in his complaint in order to satisfy the requirements of exhaustion under 42 U.S.C. § 1997e(a). Plaintiff only had to name the John Doe Officer Defendants in the inmate complaint if the prison grievance system or Wis. Admin. Code § DOC 310.07 required it, and it is *not required* in either.

Exhaustion is met if Plaintiff's inmate complaints contained "sufficient information for the department to investigate and decide the complaint." *Id.* § DOC 310.07(6). In support of his motion for summary judgment, Julson provided the Court with the ICRS history for Plaintiff, the inmate complaint, the ICE reports, and the incident report regarding the events at issue in this case. (Docket #16-2). In Plaintiff's inmate complaint he states that, "capt. Jewelson refused to allow me to shower after spraying me with a chemical." (*Id.* at 10). Although the inmate complaint only names Julson, the incident report makes it clear that the prison officials were made aware that Plaintiff was involved in an incident with several officers, including Julson. (*Id.* at 12–15). Additionally, the ICE recommendation summary of facts states that the ICE employee reviewed the incident report when investigating Plaintiff's inmate complaint. (*Id.* at 7).

The purpose of the exhaustion requirement is to give the prison administrators a fair opportunity to resolve the grievance without litigation. *Woodford v. Ngo*, 548 U.S. 81, 88–89 (2006); *see also Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013) ("once a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the purpose of the exhaustion requirement"). Based on the inmate complaint, incident report, and ICE report, the Court finds that the prison officials were put on notice of the issue that Plaintiff alleges in this action and Plaintiff exhausted his deliberate indifference decontamination shower claim against all Defendants.

Therefore, Plaintiff may proceed against all Defendants on his deliberate indifference claim regarding the denial of a decontamination shower. However, Plaintiff must identify the John Doe Officer Defendants on or before **September 2, 2021**. If they are not identified by that deadline, they will be dismissed from this case without further notice.

## 4. PLAINTIFF'S MOTION TO APPOINT COUNSEL

The Court turns to Plaintiff's pending motion to appoint counsel. (Docket #22). As a civil litigant, Plaintiff has "neither a constitutional nor statutory right to a court-appointed attorney." *James v. Eli*, 889 F.3d 320, 326 (7th Cir. 2018). However, under 28 U.S.C. § 1915(e)(1), the "court may request an attorney to represent any person unable to afford counsel." The court should seek counsel to represent a plaintiff if: (1) he has made reasonable attempts to secure counsel; and (2) "'the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it.'" *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (quoting *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc)). Whether to appoint counsel in a particular case is left to the Court's discretion. *James*, 889 F.3d at 326; *McCaa v. Hamilton*, 893 F.3d 1027, 1031 (7th Cir. 2018).

First, the Court asks whether the litigant has made "reasonable" efforts to obtain his own representation. *Pruitt*, 503 F.3d at 655; *Jackson v. County of McLean*, 953 F.2d 1070, 1073 (7th Cir. 1992). It is a question not often litigated; many district judges either overlook arguably unreasonable efforts at obtaining counsel, or they impose eminently practical requirements such as the submission of evidence demonstrating that the prisoner has tried and failed to secure representation from several lawyers. *See, e.g.*, *Kyle v. Feather*, 2009 WL 2474627, at *1 (W.D. Wis. Aug. 11, 2009).

The first element of *Pruitt* is fairly easy to satisfy, but it is not toothless, and it is not a mere technical condition of submitting a certain number of rejection letters. If it was, then a Wisconsin prisoner litigating a Section 1983 action could submit rejection letters from ten randomly selected criminal defense lawyers from Nevada and call his work complete. This cannot be. The purpose of the reasonable-efforts requirement is to

ensure that if the Court and private lawyers must expend scarce resources to provide counsel for a prisoner, he has at least made a good-faith effort to avoid those costs by getting a lawyer himself. To fulfill this duty, a *pro se* prisoner should reach out to lawyers whose areas of practice suggest that they might consider taking his case. If he learns that some of the lawyers he has contacted do not, he should reach out to others before he concludes that no one will help him.

In this case, Plaintiff states that he sent letters to two lawyers regarding representation. (Docket #22 at 4). He states that the two letters are attached as Exhibit 3. (*Id.*) However, Exhibit 3 does not exist or has not been properly filed with this Court, and no copies of letters have been attached to the motion or supporting declarations. (*See* Docket #22–#24).

As he has not provided any letters, Plaintiff's showing is simply insufficient to satisfy the first element. Plaintiff must demonstrate that he sought representation from at least three lawyers who practice in this area before making a request that the Court consider recruiting counsel to assist him. The Court acknowledges that this places an additional burden on Plaintiff, but his request for *pro bono* counsel is a serious one and cannot be taken lightly. Plaintiff has failed to satisfy the first element in *Pruitt* and the Court need not go further in its analysis. Plaintiff's motion to appoint counsel will be denied without prejudice.

5.     **CONCLUSION**

For the reasons explained above, Julson's motion for summary judgment, (Docket #13), shall be granted. The only claim which now remains is Claim Three for deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment—to the extent it relates to the denial of decontamination shower after Plaintiff was sprayed with OC "pepper" spray—by Defendant Michael Julson and John Does 1–4,

on November 18, 2019. Plaintiff's motion for recruitment of counsel, (Docket #22), will be denied without prejudice.

Accordingly,

**IT IS ORDERED** that Defendant's motion for summary judgment (Docket #13) be and the same is hereby **GRANTED** as to Claims One, Two, and Four in full, as well as to Claim Three in part (to the extent it relates to Plaintiff's request for medical attention);

**IT IS FURTHER ORDERED** that Claims One, Two, and Four in full, as well as Claim Three in part (to the extent it relates to Plaintiff's request for medical attention), are **DISMISSED without prejudice** for Plaintiff's failure to exhaust administrative remedies;

**IT IS FURTHER ORDERED** that Plaintiff must identify the John Doe defendants on or before **September 2, 2021**. If they are not identified by that deadline, they will be dismissed without further notice; and

**IT IS FURTHER ORDERED** that Plaintiff's motion to appoint counsel (Docket #22) be and the same is hereby **DENIED without prejudice.**

Dated at Milwaukee, Wisconsin, this 4th day of June, 2021.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge